IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Crim. No. 4:21-CR-075 |
| | ) |
| v. | ) GOVERNMENT'S |
| | ) SENTENCING |
| BRADEN CRAIG SHAFER, | ) MEMORANDUM |
| also known as, "Stickup", | ) |
| | ) |
| Defendant. | ) |

## Table of Contents

INTRODUCTION ................................................................................................. 1

ADVISORY GUIDELINES RANGE .................................................................... 2

THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 428 MONTHS' PRISON ... 2

CONCLUSION ..................................................................................................... 6

### INTRODUCTION

Defendant, an armed gang member, committed a series of brazen and violent acts over a short time period. His reign of terror ended only when he was shot in the head during a gang-related gun battle. However, even after being shot in the head, Defendant has continued to flaunt and publicly glorify his gang membership. The Court should impose a sentence of 428 months' imprisonment.

1

## ADVISORY GUIDELINES RANGE

The parties agree that the advisory guidelines range should be calculated as follows:

| | |
|---|---|
| Base offense level (§2A2.1(a)(1) (Count 1)) | 33 |
| Base offense level (§2A2.1(a)(1) (Count 4)) | 33 |
| Multiple count adjustment (§3D1.4)) | +2 |
| Acceptance of responsibility (§3E1.1) | -3 |
| Total offense level | 32 |

Criminal History                                III

Guidelines range:   151 to 188 months' imprisonment + 240 months', consecutive, for a total of 391 to 428 months' imprisonment

## THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 428 MONTHS' PRISON

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
    A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B. to afford adequate deterrence to criminal conduct;
    C. to protect the public from further crimes of the defendant; and
    D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a).  For the reasons that follow, the § 3553(a) factors support a sentence of 428 months' imprisonment.

Defendant is an admitted violent gang member responsible for multiple shootings in residential neighborhoods.  (Dkt. No. 140.)  That, in and of itself, is enough to warrant a significant sentence.  However, Defendant's conduct in this case presents in an even more aggravated form that should cause the Court significant concern for the safety of the community.

In early 2020, Defendant repeatedly poured gasoline on the embers of a gang-related dispute that had been festering for some time.  (PSR ¶¶ 11-13.)  He did this by openly celebrating, via social media, the deaths of rival gang members.  (PSR ¶¶ 12-13.)  Defendant's actions caused the already simmering gang wars to explode, culminating in a series of shootings in residential neighborhoods.  (PSR ¶ 13.)  Defendant personally participated in at least two of these shootings.  (PSR ¶¶ 14-21.)  During those shootings, Defendant wildly fired his gun in urban neighborhoods from moving vehicles with absolutely no regard for the lives of innocent bystanders.  (PSR ¶¶ 15-21.)  This is especially true given those shootings occurred in broad daylight in residential neighborhoods.  (PSR ¶¶ 14-15, 17.)

The stray bullets shot by Defendant and his fellow gang members struck innocent residents' homes and vehicles.  (PSR ¶¶ 16, 21.)  On at least two occasions, people were struck by bullets, including Defendant.  (PSR ¶¶ 14, 18.)  On May 10, 2020, Mother's Day, Defendant was shot in the head during a shooting he was participating in.  (PSR ¶ 18.)  Miraculously, Defendant survived.  Although one would

be hopeful that this sort of event would cause Defendant to change his ways, that does not appear to be the case. As reflected in Government Exhibit 1, after Defendant awoke from a coma, and while still in a medical facility, he began repeatedly flashing gang signs while a fellow gang member (Robert John Manuel Jr.) live-streamed it to Facebook. (GX1.) This is deeply concerning to the government both for the risk of recidivism posed by Defendant, as well as the danger to the community if Defendant does commit more crimes. His past behavior demonstrates that he is the epitome of danger to the community.

In addition to Defendant's involvement in shootings in the community, his social media presence also poses a danger. Both before and after Defendant was shot in the head, his active social media presence had real-world consequences. As previously noted, and outlined in the PSR, Defendant's blatant taunting and disrespect of rival gang members on social media ignited the gang-related shootings at issue here. (PSR ¶¶ 12-13.) Further, the live-streamed video featuring Defendant and posted on Facebook by Manuel, encouraged further gang violence.

When neighborhood-based gangs post on social media, it perpetuates street violence by essentially advertising the gang to potential members. (PSR ¶ 11.) It romanticizes and glorifies the criminal gang lifestyle and, thereby, entices others to become gang members and engage in violence. Within the video, you can hear Manuel Jr. bragging about how many people were watching and "liking" the video. (GX1.) As evidenced by Defendant's behavior in this case, this social media activity also escalates tensions with rival gangs. Again, within the video, Manuel Jr. can be

4

heard taunting the "opps" and bragging that Defendant had survived the shooting. (GX1.) And Defendant can be heard stating "this shit ain't over," that he is a "CBK (C-Block Killer)," talking about "snitches," and that is "still moving just fine." (GX1.) Defendant's behavior does not instill confidence that he is in any way interested in changing his behavior. Instead, it shows that he is firmly committed to the gang lifestyle.

Defendant's criminal history also demonstrates this was not his first foray into serious criminal activity. He has been involved with the criminal justice system since age 14, when he stole a pair of jeans from Von Maur. (PSR ¶ 55.) Defendant's behavior quickly escalated from there. Less than two months later, Defendant stole a vehicle, which he used to back into another vehicle and drive into a house. (PSR ¶ 56.) Defendant then fled from the scene. (*Id.*) After that, at age 16, Defendant threatened to rob two other individuals while he possessed a gun. (PSR ¶ 57.) He also discharged that gun. (*Id.*) While on probation, Defendant repeatedly violated his conditions. (PSR ¶¶ 55-57.) This included for serious behavior, such as committing new crimes, absconding, testing positive for drugs, and being in the vicinity of people using weapons. (*Id.*)

Defendant's repeated involvement in violence, gang activity, and conduct following the shootings creates a danger to the community. His physical condition is not a mitigating factor here, as even after being shot in the head, Defendant has continued his public promotion and support of OTB. Further, it was caused by his own actions. A sentence of 428 months' prison achieves the goals of sentencing.

## CONCLUSION

The Court should impose a sentence of 428 months' imprisonment.

                                              Respectfully Submitted,

                                              Richard D. Westphal
                                              United States Attorney

By:   */s/ Kristin M. Herrera*
        Kristin M. Herrera
        Assistant United States Attorney
        United States Courthouse Annex
        110 East Court Avenue, Suite 286
        Des Moines, Iowa 50309-2053
        Tel: (515) 473-9300
        Fax: (515) 473-9292
        Email: kristin.herrera@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on January 13, 2022, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

\_\_\_\_ U.S. Mail   \_\_\_\_ Fax   \_\_\_\_ Hand Delivery

_X_ ECF/Electronic filing   \_\_ Other means (email)

UNITED STATES ATTORNEY
By:   */s/Kristin M. Herrera, AUSA*